**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRETT ANDEREW NACE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY, [1]<br><br>　　　　Defendant. | No. 1:23-CV-00997-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.　　INTRODUCTION

Plaintiff Brett Nace ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 8).

## II. BACKGROUND

Plaintiff was born on January 17, 1970. (Administrative Record ("AR") 195). He filed his claim for DIB on September 13, 2020, alleging a disability onset date of May 5, 2020. (AR 195). In his application, he alleged disability based on his "Back Pain, Leg Pain, Spinal Stimulator/Hardware, Lumbar Spondylosis with levoscoliosis deformity, Six lumbar vertebrae, and anxiety due to chronic pain." (AR 223-24). Plaintiff has a high-school education, and he previously worked as a welding inspector and a truck driver. (AR 224-26).

### A. Relevant Evidence of Record[3]

#### 1. Medical Evidence

Plaintiff has a history of back pain, dating back to a workplace injury in 1990. (AR 414, 245). He underwent transforaminal lumbar interbody fusion surgery from L5-S1 in 2013, which involved the implantation of rods and screws to stabilize the lumbar spine. (AR 338, 504414). After the procedure, he reported little to no change in his leg and back pain. (AR 335). He then received a spinal cord stimulator placement in 2015. (AR 504). For most of the relevant period, the presence of a spinal cord stimulator prevented Plaintiff from undergoing an MRI. (AR 415).

Plaintiff often reports pain in his back, leg and groin. (AR 335; 338; 359; 363; 361, 14-18). Plaintiff has been diagnosed with multilevel degenerative disc disease and a herniated lumbar disc (AR 363), as well as lumbosacral spondylosis with radiculopathy (AR 337). Examinations have also shown tenderness in his lumbar region, a limited range of motion of his lumbar spine, and positive straight-leg raising tests. (AR 363, 330, 361). A May 2020 CT showed "[d]egenerative changes are seen most significant above and below the surgery, including a herniated disc at the L5-S1 level" and "probable impingement upon the traversing right S-1 nerve root" with "moderate to severe right-sided L5-S1 lateral recess stenosis and moderate right-sided L5-S1 aforaminal stenosis." (AR 346). Plaintiff had the simulator surgically removed from his spine in July 2021. (AR 514). Although his back pain persisted, he noted a ten percent reduction in his pain. (AR 439, 443 445). Plaintiff subsequently underwent an MRI, which

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

showed "significant degenerative disc and facet11 disease above his level of his previous fusion especially at the L4-5 level . . . moderate to severe spondylosis . . . [and] moderate to severe spinal canal stenosis" at the L4-L5 level." (AR 441).

Regarding pain management, Plaintiff has taken Meloxicam (a non-steroidal anti-inflammatory) and Tizanidine (a skeletal muscle relaxant), and pregabalin (also known as Lyrica, which is used to relieve nerve pain). (AR 361, 359). During much of the relevant time, providers noted he was not a candidate for narcotics, as he worked as a truck driver. (AR 361). Plaintiff's providers, however, prescribed the opioid Norco after he quit working. (AR 409-412). Armin Deroee, M.D., increased his Norco prescription in September 2020 (AR 396) but Plaintiff reported in November 2020 that "[h]e believes that he is going to benefit from increasing the potency of Norco. He takes Norco once every other or few days and he does not take it on a daily basis. Opioids improved the pain and function in the past . . . . He believes Norco does not improve the pain significantly." (AR 388).

Plaintiff reported in December 2020 that his pain was better controlled with another prescription, Nucynta, and he reported being able to stand for longer periods of time. (AR 382). Plaintiff again reported improved function with Nucynta in January 2021, although he worried he was "building up a tolerance" to the medication. (AR 376). He reported being able to ride a bicycle. (AR 376). At a March 23, 2021, appointment, Plaintiff reported that "He is very pleased with the relief he is getting, able to stand longer, walk farther with medication." (AR 805). Plaintiff, however, also reported pain "all the time" to his primary care provider at an appointment the next day. (AR 469). Plaintiff continued to rotate between Norco, Flexeril, and various other pain medications with varying levels of success. (AR 782, 768, 766).

**2. Opinion Evidence**

Plaintiff's treating neurosurgeon Dennis Cramer, D.O., submitted a Functional Capacity Evaluation report dated August 10, 2021. (AR 745-749). Dr. Cramer concluded the following:

> The patient is not able to sit frequently on a frequent basis. After sitting for 8 minutes he needs to stand up stretch and walk. The patient is not able to walk on a frequent basis. He is able to walk up to 10 minutes before he has to take a break. The patient is not able to stand on a frequent basis. He can stand up to 12 minutes

3

> before he has to sit down. The patient is not able to kneel on a frequent basis. The patient is not able to bend and stoop on a frequent basis. The patient is able to perform simples grasping on a frequent basis. The patient is able to perform fine manipulation on a frequent basis.

(AR 749). Dr. Cramer also noted that Plaintiff could lift eight to ten pounds from the floor to his waste, 14-15 pounds from his waist to his shoulder, and he could carry 12 pounds for approximately 15 feet. (AR 749).

**B.     The ALJ's Decision**

Plaintiff filed his claim for DIB on September 2, 2020, alleging a disability onset of date of May 5, 2020. (AR 15). The Commissioner denied Plaintiff's application initially on November 13, 2020, and again upon reconsideration on March 22, 2021. (AR 15). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on June 23, 2022. (AR 15). At the hearing, Mark Anderson, an impartial vocational expert, testified. (AR 15). In a decision dated July 8, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 81-92).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 5, 2020 (step one). (AR 18). At step two, the ALJ found Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine with scoliosis, spondylosis, stenosis, and radiculopathy; obesity; chronic pain syndrome; and lumbar postlaminectomy syndrome (20 CFR 404.1520(c)). (AR 18). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19-20).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff perform the following:

> Light work, as defined in 20 CFR 404.1567(b), except he must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. He can occasionally push or pull or operate foot controls with both lower extremities. He can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the Selected Characteristics of Occupations of the DOT, and can occasionally climb stairs and ramps. He can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. He can tolerate occasional exposure to vibration. In addition, he can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions. He will be off task 15% of the workday.

(AR 20-21). At steps four, the ALJ found that Plaintiff could not perform any past relevant work and the transferability of job skills was not material because considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Doc. 28). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: Mail Clerk (Dictionary of Occupational Titles ("DOT") 209.687-026)); Inspector and Hand Packager (DOT 559.687-074); and Electronics Worker (DOT 726.687-010 (AR 28). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 31).

Plaintiff sought review of this decision before the Appeals Council, which denied review in April 2023. (AR 5). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.  LEGAL STANDARDS

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

6

B. **Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

(citations omitted).

## IV.     DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in evaluating Dr. Cramer's medical opinion. For the reasons discussed below, the Court finds the ALJ erred in this respect. Because the Court will remand the matter on that basis, the Court will decline to address Plaintiff's remaining assertion of error.

**A.     Legal Standards**

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

8

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

**B.     Analysis**

In rejecting Dr. Cramer's opinion, the ALJ stated the following:
> The undersigned has considered the August 2021 opinion of medical evaluators, Dennis Cramer, D.O. and Seyedamir Sherafat, D.C. (12F). This assessment is of limited persuasiveness. Drs. Cramer and Sherafat opined in a Functional Capacity Evaluation that the claimant was not able to sit, walk, stand, kneel, bend and stoop, perform simple grasping, or perform fine manipulation on a frequent basis (12F/6).

9

> This opinion is supported by exam findings showing tenderness in the lumbar and cervical spine with limited range of motion and 5/5 motor strength in the bilateral lower extremities (12F/5). This opinion is not consistent with the overall evidence in the case showing at a February 10, 2022 exam, the claimant reported improvement of pain with medication and greater than 50% reduction in symptoms (9F/2). He is able to assist with household chores and ride a bicycle for exercise (13F/4, 69).

(AR 25-26).

The record reflects that Dr. Cramer acted as Plaintiff's treating neurosurgeon. (AR 745-49). Dr. Cramer's Functional Capacity Evaluation report dated August 10, 2021, opined that Plaintiff had severe limitations, such that Plaintiff would be limited to sitting for eight minutes at a time, he could walk for up to 10 minutes at a time, and he was limited to standing for 12 minutes at a time. (AR 749). He also opined that Plaintiff was restricted to kneeling, bending, stooping, grasping, and performing fine manipulations on a less-than-frequent basis. Plaintiff contends the ALJ improperly discounted this opinion, as

> No information is provided as to the length of time [Plaintiff] was able to assist his wife. The ALJ does not explain how [Plaintiff] helping his wife with vacuuming on this one occasion is somehow inconsistent with Dr. Cramer's opinion that Plaintiff is limited to standing up to 12 minutes before he must sit down and is able to walk for up to 10 minutes before he must take a break.

(Doc. 12 at 24).[5]

The Court concludes that the ALJ improperly evaluated the supportability and consistency of Dr. Cramer's opinion. The ALJ found that while Dr. Cramer's findings supported his opinion, it was inconsistent with the longitudinal record. To support the finding that Dr. Cramer's opinion was not supported by the longitudinal record, the ALJ cited a singular medical report (even though Plaintiff subsequently reported that his pain worsened), and a few mentions that Plaintiff either vacuums on occasion or twice reported riding a bicycle for exercise. (AR 25-26). The ALJ provides no further analysis on how those facts disprove Dr. Cramer's opinion. The ALJ did not discuss or evaluate the functional limitations opined by the provider in any meaningful way. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing

---

[5] Plaintiff also takes issue with the ALJ's citations to the record. While some of the ALJ's record citations seem to be incorrect, Plaintiff admits the factual propositions are in the record, albeit on different pages than the ALJ cites.

10

more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ was required to consider the functional limitations identified by Dr. Cramer (namely, Plaintiff's inability to sit, stand or walk for extended periods of time) and to explain, if any, weight they assigned these limitations in determining Plaintiff's RFC along with reasons in support of that conclusion. *See Kenneth C. v. Saul*, No. 19-cv-06627-JST, 2021 WL 4927413, at *11 (N.D. Cal. Mar. 15, 2021) (quoting *Means v. Colvin*, No. 2:15-cv-0327-KJM-CKD, 2016 WL 366358, at *2 (E.D. Cal. Jan. 29, 2016) (finding reversible error because the ALJ failed to address medical opinion evidence)); *see also Kelly v. Astrue*, 471 F. App'x 674, 676 (9th Cir. 2012) (finding the ALJ erred in silently disregarding the medical opinions of the treating psychiatrist). Defendant argues that Plaintiff's improvement was inconsistent with the extreme limitations assigned by Dr. Cramer (Doc. 14 at 9), but the ALJ did not specifically state as much in the opinion, and neither the Court, nor the Commissioner, may post-hoc "comb the administrative record" to find support for the ALJ's finding as to the persuasiveness of Dr. Cramer's opinion. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). In the absence of any meaningful discussion by the ALJ, the Court cannot determine whether the ALJ properly considered all of the limitations identified by Dr. Cramer. *See Garrison*, 759 F.3d at 1012–13; *see also Mason v. Barnhart*, 63 F. App'x 284, 287 (9th Cir. 2003) (reversing the ALJ's decision where the ALJ seemed to reject, without comment, the physician's assessment of the plaintiff's ability to work, "making it difficult for [the] court to engage in meaningful review"); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion . . . without providing an explanation supported by substantial evidence.").

The Court cannot conclude that the error below was harmless. *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). If the ALJ were to have accepted any part of the rejected opinion, such as Plaintiff's inability to lift, sit, or stand for prolonged periods of time, the ALJ

11

likely would have reached an RFC determination with greater limitations than those assessed.  A substantial likelihood exists that the ALJ's improper rejection of the opinion evidence affected the result and therefore was not "inconsequential to the ultimate nondisability determination," so the error was not harmless.  *Molina*, 674 F.3d at 1121–22.

**C.     Remand for Further Proceedings is Appropriate**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." T*reichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where courts "remand[ ] for an award of benefits instead of further proceedings."  *Id.* at 1100–01 (citations omitted); *see also id*. at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful."  *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . .  may well prove enlightening in light of the passage of time."  *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Having found that the ALJ failed to articulate legally sufficient reasons for rejecting medical opinion evidence by Dr. Cramer, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings will be useful.  In particular, the ALJ's RFC determination conflicted with such opinion evidence, and can be remedied with further proceedings to accord an opportunity to the ALJ to resolve this conflict.  *Cf. Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL 541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the

conflict.' ") (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  The Court will, therefore, remand this matter for further proceedings.  On remand, the ALJ should address this error by properly evaluating the medical evidence and re-assessing Plaintiff's functional limitations considering that evaluation and the other medical evidence of record.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider the medical opinion evidence and reassess Plaintiff's RFC, the Court need not address Plaintiff's other allegations of error (*see, e.g.*, Doc. 12 at 18).  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Brett Nace and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **August 2, 2024**                         /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE

13